IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                                **Case No. 06-40138-01-RDR**

THOMAS GUY CARAWAY,

           Defendant.

---

**MEMORANDUM AND ORDER**

Defendant has been convicted by a jury of: knowingly causing an explosive device to be delivered by the U.S. Postal Service with the intent to kill or injure another person in violation of 18 U.S.C. §1716; and possession of a destructive device in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). This case is now before the court upon defendant's motion for judgment of acquittal or, in the alternative, for a new trial.

<u>Motion standards</u>

A court may grant a motion for new trial "if required in the interest of justice." FED.R.CRIM.P. 33. However, motions for new trial are viewed in disfavor and granted only with great caution. <u>U.S. v. Chatman</u>, 994 F.2d 1510, 1518 (10th Cir.) <u>cert. denied</u>, 510 U.S. 883 (1993). "'[T]he power to grant a new trial [because the verdict is against the weight of the evidence] should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.'" <u>U.S. v. Evans</u>, 42 F.3d 586, 593-94 (10th Cir. 1994) (reciting quotation from 3 C.Wright, <u>Federal</u>

Practice & Procedure, § 553, at 248 (2d ed. 1982)). In general, "[a]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." 3 C.Wright, Federal Practice & Procedure, § 556, at 306 (2nd ed. 1982).

In assessing a motion for acquittal, we determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. U.S. v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004). As we do so, we do not weigh conflicting evidence or consider the credibility of witnesses. Id.

Factual background

This case involved a family that lived near the small town of Dehlia, Kansas in 2003 and 2004. Defendant and Denise Caraway were husband and wife. They had two children, Shawn and Jessica Caraway. Both children had progressed beyond high school during the relevant events in this case. Denise Caraway decided to leave the defendant and seek a divorce around the middle of 2003. Defendant's use of methamphetamine was an issue in the marriage, although Denise Caraway admitted that she also had used methamphetamine. The children used methamphetamine as well in 2003 and 2004. The break-up of the marriage made defendant quite upset, and he voiced hateful feelings towards Denise and a man named Spud Owens, with whom he thought his wife was having a relationship.

Shawn Caraway testified at trial that around the middle of the

Practice & Procedure, § 553, at 248 (2d ed. 1982)). In general, "[a]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." 3 C.Wright, Federal Practice & Procedure, § 556, at 306 (2nd ed. 1982).

In assessing a motion for acquittal, we determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. U.S. v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004). As we do so, we do not weigh conflicting evidence or consider the credibility of witnesses. Id.

Factual background

This case involved a family that lived near the small town of Dehlia, Kansas in 2003 and 2004. Defendant and Denise Caraway were husband and wife. They had two children, Shawn and Jessica Caraway. Both children had progressed beyond high school during the relevant events in this case. Denise Caraway decided to leave the defendant and seek a divorce around the middle of 2003. Defendant's use of methamphetamine was an issue in the marriage, although Denise Caraway admitted that she also had used methamphetamine. The children used methamphetamine as well in 2003 and 2004. The break-up of the marriage made defendant quite upset, and he voiced hateful feelings towards Denise and a man named Spud Owens, with whom he thought his wife was having a relationship.

Shawn Caraway testified at trial that around the middle of the

day on January 28, 2004, defendant directed him to mail a package. He stated that defendant gave him $20.00; provided instructions regarding how to address the package; and told him to mail the package at the Wamego, Kansas Post Office instead of the post office at Dehlia. Shawn Caraway testified that he did not own a vehicle and that defendant did not trust him with defendant's vehicle. So, he asked his sister to drive him in defendant's vehicle to the Wamego, Kansas Post Office to mail the package. He stated that she did. The trial evidence showed a package addressed to Spud Owens which contained a bomb was mailed from the Wamego Post Office on the day stated by Shawn Caraway. The bomb exploded when it was opened at Spud Owens' residence. But, the device did not work completely as designed and was still fairly intact after the explosion. Shawn Caraway identified the device as something he had seen at defendant's home sometime prior to the day he mailed the package to Spud Owens.

During the prosecution's opening statement, counsel for the government indicated that he was not sure what the testimony of Jessica Caraway would be. She had testified to a grand jury in November 2004 that she did not give Shawn Caraway a ride to the Wamego Post Office. But, in November 2006, she wrote and swore to the following statement before U.S. Postal Inspectors:

> A couple years back I was at my father's house w/my brother. I was getting ready to leave in my dad's car when my brother came out with something in his hand and asked me to give him a quick ride to Wamego. I didn't

3

> [know] where we were going.  I was very high on meth.
>       We stop[p]ed at a post office in Wamego he went in a[nd] came back out.  From there I took him home.  And I went on my way.
>       This is all I really remember do (sic) to the fact I was on meth.  I'm sorry I lied to the grand jury.  I was very scared.
>       During the time I lived with my dad I heard several explosion[s].  I also I heard my dad make threats to Spud & my mom.  I'm sorry for what happened if I knew what it was I was doing it would have never happened.
>       I'm sorry for anything that happened to Spud I wish it would have never happened.

This statement was marked as Exhibit 12 and introduced into evidence at trial over defendant's objection.

The government called Jessica Caraway as a witness at trial. She testified that defendant made hateful remarks about her mother and Spud Owens after defendant and her mother separated. She said the remarks were justified although she also indicated that defendant was not serious about the remarks.

At trial, Jessica Caraway stated that she did not drive Shawn Caraway to the post office. When she was confronted with the statement she wrote in Exhibit 12 she explained that she lied when making the statement because of pressure she felt from her mother and Spud Owens and because she had two kids, was pregnant, was broke, and had been promised by her mother that they would go grocery shopping.

The next witness at the trial was Paul Mezzanotte, a postal inspector who witnessed the statement Jessica Caraway made in Exhibit 12. He described the circumstances surrounding the written

statement and the demeanor of Jessica Caraway at the time. He testified that Jessica Caraway was crying and hugged her mother and Spud Owens after she finished making the sworn statement in Exhibit 12. Denise Caraway also testified regarding the circumstances surrounding the statement Jessica Caraway made in Exhibit 12. She stated that there was no pressure on Jessica Caraway to say something that was not true.

### Improper use of impeachment evidence

Defendant contends that the prosecution improperly called Jessica Caraway as a witness for the purpose of introducing Exhibit 12 as "impeachment" evidence which would otherwise be inadmissible as substantive evidence. The Tenth Circuit has held that such a practice is improper. U.S. v. Carter, 973 F.2d 1509, 1513 (10th Cir. 1992) cert. denied, 507 U.S. 9232 (1993) ("a witness may not be called and then impeached if the underlying purpose is to utilize hearsay evidence as substantive evidence against the defendant"); U.S. v. Johnson, 977 F.2d 1360, 1382 (10th Cir. 1992) (the prosecution may not call a witness "when the prosecution's primary intent is not to elicit substantive evidence from the witness, but to introduce otherwise inadmissible impeachment evidence to contradict the witness' statements at trial"). The Tenth Circuit has also acknowledged the difficulty of determining the motivation of the prosecution and held that "courts should find a party called a witness for an improper purpose only where the

trial record establishes clearly and unequivocally the circumstances showing an improper purpose existed." Carter, 973 F.2d at 1513.

In this case, the record does not clearly establish that the prosecutor called Jessica Caraway as a witness merely to introduce Exhibit 12 into evidence. The last statement Jessica Caraway had given to the investigative authorities was Exhibit 12. The prosecutor may have believed that at trial Jessica Caraway would repeat her most recent statement to investigators rather than the statement she made in 2004 to the grand jury. In addition, Jessica Caraway gave trial testimony regarding defendant's statements about her mother and Spud Owens which assisted the prosecution and was consistent with her prior statements in this matter. Therefore, the prosecutor had a strong reason for calling Jessica Caraway as a witness, regardless of the contents of Exhibit 12. The court further believes that a prosecutor in this case would reasonably expect the jury to desire that he call Jessica Caraway to testify, given the circumstances of this case. Finally, Exhibit 12, by itself, did not directly inculpate defendant; it simply corroborated a part of Shawn Caraway's testimony regarding how he traveled to the Wamego Post Office. Shawn Caraway was a vital witness for the prosecution. But, Exhibit 12 was not critical to the prosecution's case, in the court's opinion.

We acknowledge that the Eighth Circuit advocates that the

court ignore the possible motive of the government in introducing prior inconsistent statements and focus upon whether the probative value of the statement for impeaching the credibility of a witness is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  U.S. v. Logan, 121 F.3d 1172, 1175 (8th Cir. 1997) (quoting FED.R.EVID. 403).

     We believe the probative value of the statement as impeachment does outweigh any countervailing interests in this matter.  As mentioned, Exhibit 12 does not directly inculpate defendant, at least the part of the exhibit that was relevant to impeachment. Nor did it create confusion or mislead the jury.  It was not unduly cumulative or wasteful of time.  Furthermore, the jury was instructed at the end of the trial that evidence of prior inconsistent statements, including Exhibit 12, should only be considered as impeachment evidence and not as proof of anything else.

     In summary, we believe that the evidence of Jessica Caraway's prior inconsistent statement was properly admitted into evidence. It was not offered for an improper purpose, and its probative value outweighed any prejudice to the defendant.

     <u>Instruction on prior inconsistent statements</u>

     Defendant's next argument for relief faults the court for

failing to give an instruction to the jury regarding how to consider evidence of prior inconsistent statements.  However, the court, as defendant admits in a later filing (Doc. No. 64), did give such an instruction in the final instructions to the jury. The court believes our efforts to instruct the jury were adequate and that defendant's attack upon the court's instructions does not justify a new trial or judgment of acquittal.

### Sufficiency of the evidence

Defendant contends that the evidence was insufficient to support his convictions in part because his convictions were based largely upon the "uncorroborated" testimony of his son, Shawn Caraway.  Shawn Caraway received leniency from the government in return for his testimony.  He had abused drugs, and he admitted to lying to a grand jury regarding this case.  Defendant also asserts that the testimony of his boss and the records admitted through his boss' testimony showed that defendant was at work the whole day that Shawn Caraway allegedly mailed the bomb at the Wamego Post Office.

We disagree with defendant's position.  The uncorroborated testimony of an accomplice or of a coconspirator has been held to be sufficient by itself to support a jury's verdict.  U.S. v. Smith, 131 F.3d 1392, 1399 (10th Cir. 1997) cert. denied, 522 U.S. 1141 (1998); U.S. v. Ivy, 83 F.3d 1266, 1284 (10th Cir.) cert. denied, 519 U.S. 901 (1996).  Furthermore, the credibility of Shawn

Caraway's testimony was a matter for the jury to decide unless it was inherently incredible.  Smith, 131 F.3d at 1399.  Shawn Caraway's testimony was not inherently incredible.  Defendant had the motive to commit the alleged criminal acts and had voiced a desire for retribution against his former wife and Spud Owens. Testimony indicated that he had considerable mechanical aptitude and access to the knowledge and the materials needed to construct the device in question.  There was nothing in the evidence to demonstrate that Shawn Caraway's version of what happened was unbelievable on its face or was physically impossible.  Defendant suggests that his boss' testimony established that defendant was at work when Shawn Caraway testified that defendant instructed him at their home to mail the package containing the bomb.  However, the boss' testimony was subject to credibility questions.  He understandably did not have a clear memory of the events of what would have been, for him, a mundane day over three years before his trial testimony.  He admitted that he often left defendant's work site.  The "records" of defendant's hours at work were scraps of paper where defendant filled out his own hours.  The paper allegedly covering the day when the bomb was mailed did not list dates, only the days of the week. Contrary to the boss' testimony, the papers indicate that defendant did take lunch breaks when he may have traveled away from the work site.  In sum, we find that the evidence was sufficient to support the jury's findings of guilt

9

in this case.

### Cumulative error

Finally, defendant claims that the cumulative effect of the trial errors in this case requires a new trial. We disagree. Defendant received a fair trial, and the jury's decision is supported by the evidence.

### Conclusion

Defendant's motion for new trial or judgment of acquittal shall be denied.

**IT IS SO ORDERED.**

Dated this 9th day of July, 2007 at Topeka, Kansas.

                                s/Richard D. Rogers
                                United States District Judge