# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

   vs.                    **Case No. 06-40138-01**

                                    **09-4141-RDR**

THOMAS GUY CARAWAY,

          Defendant.

_____

## MEMORANDUM AND ORDER

This case is before the court upon defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255. Defendant was convicted by a jury of using the mail to deliver an explosive device with intent to kill or injure in violation of 18 U.S.C. §§ 1716(a) and 1716(j)(2) and possessing a firearm that was a destructive device in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(ii). Defendant is currently serving a sentence of 30 years pursuant to those convictions.

I.  FACTUAL BACKGROUND

On January 29, 2004, a rural mail carrier delivered a large package to Spud Owens' residence in Washington, Kansas. No one was at home at the time, so the package was left in a pickup truck on the property. The next day, Daniel Owens, Spud Owens' son, found the package in the truck and brought it inside the home. Although the package was addressed to Spud Owens, Daniel thought the package

could be a birthday present for him because his birthday was two days earlier.

He and his father opened the package and removed what appeared to be a toolbox. When they opened the toolbox, it exploded, propelling shotgun pellets in all directions and injuring Spud and Daniel. Some of the components of the bomb were described in the Tenth Circuit's opinion on direct appeal:

> First were two improvised shotgun barrels, each holding a 12-gauge shotgun shell, welded onto a metal plate on the bottom of the device. The rear of each barrel was covered by a threaded-on end cap with a hole large enough to accommodate the passage of a firing pin. The firing pin was cocked and held in place by a spring. When the spring was released, the firing pin would strike the shell and fire it. One of the firing pins was equipped with a washer, so that when the pin was released, the washer would hit a toggle switch, flipping the switch to complete an electrical circuit connected to four batteries. The batteries lit a model-rocket ignitor inside a bag of gun powder within a PVC pipe, which would explode upon ignition. As a final touch, a bottle of gasoline in the device was apparently intended to cause a fire after the explosion. Luckily, only one shotgun shell fired when the box was opened, and explosives experts safely dismantled the rest of the device.

U.S. v. Caraway, 534 F.3d 1290, 1292 (10th Cir. 2008).

A postal sticker on the packaging showed that the device had been mailed from the Wamego, Kansas Post Office. Mike Wulf, a postal clerk at the Wamego Post Office, recalled receiving the package for mailing from a young man in his twenties of average build. A computer record showed that the postage was paid with a twenty dollar bill.

Defendant's son, Shawn Caraway, was twenty-two at the time of

the crime and lived off and on at defendant's home. He testified that he mailed the package at the Wamego Post Office as directed by defendant, although Wamego was not the closest post office to the home. He stated that defendant gave him a twenty dollar bill to pay the postage. He testified that his sister, Jessica Caraway, gave him a ride to the post office. Shawn Caraway described seeing the bomb on the coffee table in defendant's living room some time before he was asked to mail it. He stated that defendant built the bomb and explained to him how it worked. At the time, Shawn thought defendant was just goofing around. Shawn drew a diagram of the device for law enforcement officers when he was interviewed after the crime.

Shawn and Jessica Caraway both testified that defendant made threatening and hateful statements about their mother, Denise Caraway, and about Spud Owens prior to the crime in this case. These comments were made multiple times over a period of several months and had hardly diminished by the time of the crime. Denise Caraway filed for divorce and left defendant's home in June or July 2003. After filing for divorce, she began a relationship with Spud Owens, who had been defendant's best friend. The divorce was final in November 2003. Denise Caraway testified that defendant persistently urged her to return to him. Spud Owens testified that defendant told him two or three months before the crime that Owens had better not continue his relationship with Denise Caraway.

Testimony from various witnesses established that defendant was a good mechanic and a "jack-of-all trades."  Defendant had previously made firecrackers, pop-bottle bombs and other explosive devices.  When investigators searched defendant's property, they found many items that resembled those found in the explosive device, including duct tape, red tape, white PVC pipe of 1-inch diameter, shotgun pellets, shotgun shell casings, blue and black wires, springs, Triple Seven brand gun powder, and toggle switches.  They also found a scrap of greenish paper that was of about the same color and thickness as the greenish paper used to wrap the package.  Shawn Caraway testified that he and defendant had used the paper when they painted cars.  He also testified that his father warned him prior to the search that he should get stuff cleaned up because the police might be searching the property.  Welding tools and shotgun-shell reloading tools were also found on the property.

II.  SECTION 2255 STANDARDS

Under § 2255:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the rules governing § 2255 motions:

The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion. . . .

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; <u>United States v. Galloway</u>, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995).  To be entitled to an evidentiary hearing, the defendant must allege facts which, if proven, would entitle him to relief.  See <u>Hatch v. Oklahoma</u>, 58 F.3d 1447, 1471 (10th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996).  An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.  <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999), quoting <u>Engelen v. United States</u>, 68 F.3d 238, 240 (8th Cir. 1995); see also <u>U.S. v. Fisher</u>, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments); <u>Hatch</u>, 58 F.3d 1471 ("the allegations must be specific and particularized, not general or conclusory").

III.  INEFFECTIVE ASSISTANCE OF COUNSEL STANDARDS

All of defendant's arguments claim ineffective assistance of counsel in violation of defendant's rights under the Sixth

Amendment.  The Tenth Circuit has reviewed what must be shown to have a successful claim of ineffective assistance of counsel:

> A successful claim of ineffective assistance of counsel must meet the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."  <u>Id</u>. at 688, 104 S.Ct. 2052.  Second, a defendant must show that counsel's deficient performance actually prejudiced his defense.  <u>Id</u>. at 687, 104 S.Ct. 2052.

<u>U.S. v. Harms</u>, 371 F.3d 1208, 1211 (10th Cir. 2004).  To meet the first prong, a defendant must show that defense counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy.  To meet the second prong, a defendant must show a reasonable probability that, but for the deficiencies in counsel's conduct, the result of the case would have been different.  A probability is reasonable if it is sufficient to undermine confidence in the outcome.  <u>Strickland</u>, 466 U.S. at 694.

There is a strong presumption that counsel provided effective assistance of counsel, and the defendant has the burden of proof to overcome that presumption.  <u>U.S. v. Cronic</u>, 466 U.S. 648, 658 (1984).  When analyzing ineffective assistance claims, courts show deference to the performance of counsel.  <u>Strickland</u>, 466 U.S. at 689.  "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been 'completely unreasonable, not merely wrong, so that it bears no

relationship to a possible defense strategy.'" Hatch, 58 F.3d at 1459 (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir. 1983)). "The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

When an ineffective assistance of counsel claim is based on a failure to investigate and elicit testimony from witnesses, the petitioner must "'demonstrate with some precision, the content of the testimony they would have given at trial.'" Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990) (quoting United States ex rel. Cross v. DeRobertis, 811 F.2d 1008, 1014-15 (7th Cir. 1987)). See also, Martinez v. Tafoya, 13 Fed.Appx. 873, 877 (10th Cir. 7/17/2001); U.S. v. Askew, 88 F.3d 1065, 1073 (D.C.Cir.) cert. denied, 519 U.S. 986 (1996). Without a specific, affirmative showing of exculpatory evidence, the prejudice prong of the Strickland test is not met. Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). Speculation does not satisfy petitioner's obligation to demonstrate a reasonable probability that the outcome would have been different. U.S. v. Boone, 62 F.3d 323, 327 (10th Cir. 1995). Nor does it warrant an evidentiary hearing. Tafoya v. Tansy, 9 Fed.Appx. 862 at **6 (10th Cir. 5/24/2001).

IV.  DEFENDANT'S ARGUMENTS

A.  <u>Fingerprint evidence</u>

Defendant's first four arguments for relief concern his trial counsel's approach to fingerprint evidence during the trial. Government counsel and defendant's counsel entered a stipulation that Debra L. McGillivray, a Senior Forensic Latent Print Analyst employed by the United States Postal Inspection Service, would have testified in accordance with a five-page statement had she been called to testify in the trial of the case.  The stipulation was announced to the jury, but the statement was not read to the jury. Instead, the stipulation and the statement were made an exhibit and submitted to the jury with the other trial exhibits.  The jury was instructed by the court that the evidence in the case included facts to which the attorneys for the parties had stipulated and all exhibits which had been received in evidence.  Doc. No. 59, Instruction 19.

Ms. McGillivray's statement began with three single-spaced paragraphs describing her qualifications and what she does as a latent print analyst.  Next, she described the materials which were submitted for her inspection which were:  various parts of the explosive device; its packaging; and known finger and palm prints of twelve persons submitted for comparison.  The list of persons whose prints were submitted for comparison included:  defendant; defendant's son, Shawn; Spud Owens; Daniel Owens (Spud's son); persons who worked at the Wamego Post Office and others.

McGillivray stated that she found: one latent fingerprint on a piece of scotch tape labeled Q1; two latent impressions on a piece of silver tape labeled Q6; and one latent palm print on Q6. She stated that the two latent impressions on Q6 had been identified as the fingerprints of Daniel Owens and that the remaining latent fingerprint and latent palm print had not been identified.

The remainder of McGillivray's written statement consisted of eight single-spaced paragraphs describing in some detail the processes and methodologies of fingerprint analysis.

Defendant initially argues that his trial counsel was ineffective because he failed to investigate the "forensic evidence" before reaching the stipulation with government counsel. Doc. No. 101 at p. 11. However, defendant does not supply proof or a proffer regarding what additional investigation would have revealed. Therefore, he has not established that he suffered some prejudice from the alleged failure to investigate the forensic evidence.

Defendant next argues that it was error for his counsel to agree not to read the five-page statement to the jury. Again, defendant fails to show prejudice from this alleged mistake. He only speculates that the jury did not consider McGillivray's statement along with the other exhibits and that the jury may have reached a different result if the statement had been read to the jury. His conclusions are based upon the conjecture that the jury

thought the fingerprints belonged to defendant. There are no grounds to believe this since, as government counsel notes, both sides' attorneys in closing argument indicated that the fingerprint evidence was not inculpatory. Doc. 87, Tr. at 674 and 694. Defendant also ignores the considerable evidence presented against him when assessing the impact of the stipulation.

Next, defendant argues that his trial counsel should have examined the fingerprint expert or otherwise presented testimony regarding the exact location of the identified and unidentified prints. Defendant does not assert or establish that the fingerprint expert or anyone else could have provided such testimony or that the testimony reasonably could have made any difference in the verdict in the case.

Finally, defendant contends that his counsel was ineffective because he failed to cross-examine and elicit testimony from McGillivray as to why the unidentified prints were not suitable for comparing against the automated fingerprint database. This contention, however, is based on mere speculation that the prints could have been compared against the automated fingerprint database and that the results of such a comparison would have been favorable to defendant. Such conjecture does not provide grounds to vacate defendant's sentence. See Parker v. Scott, 394 F.3d 1302, 1323 (10th Cir. 2005) (sheer conjecture is not enough to establish ineffective assistance of counsel).

B.  Failure to obtain expert testimony

The next five arguments in defendant's memorandum in support of his § 2255 motion concern his counsel's failure to obtain expert testimony.

First, defendant contends that his trial counsel was ineffective because he did not request an independent expert to analyze the fingerprint evidence in this case and conduct a search in the automated fingerprint identification system.  Defendant does not provide any grounds to believe that a fingerprint expert would have developed evidence helpful to defendant.  As the government argues, it is possible that additional expert analysis would have been adverse to defendant's case.  See Boyle v. McKune, 544 F.3d 1132, 1138-39 (10th Cir. 2008) cert. denied, 129 S.Ct. 1630 (2009) (as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony).

Next, defendant asserts that his counsel erred by failing to develop and follow up on DNA evidence.[1]  A pubic hair and three head hairs were collected by the investigators in this case.  None of the hairs were matched to defendant.  Defendant speculates that if his counsel had retained an expert who could have obtained DNA samples from other "suspects," then a match may have been found,

---

[1] Defendant presents this claim in his sixth and seventh arguments for relief in his memorandum in support of his § 2255 motion.  Doc. No. 101 at pp. 21-25.

perhaps by comparing the hairs to the DNA profiles stored in the FBI Combined DNA Index System. This is pure conjecture. It provides no grounds for relief under § 2255.

Defendant further contends that his trial counsel erred by failing to employ the services of a handwriting expert. During defendant's trial, the government presented the testimony of a handwriting expert who could not definitely identify or eliminate any one of three persons (one of whom was Shawn Caraway) as the source of the handwriting on the mail bomb package. Defendant suggests, without providing any reasons in support of the suggestion, that his trial counsel could have found a handwriting expert who would have testified that someone other than Shawn Caraway addressed the mail bomb package. He further speculates that such testimony would have been sufficient to produce a reasonable probability that the result of the trial would have been different. Defendant's position is only supported by speculation and, therefore, does not provide grounds to vacate his sentence.

Finally, defendant argues that his trial counsel should have presented testimony from a drug addiction expert who could have attacked the credibility of Shawn Caraway and Jessica Caraway, admitted methamphetamine addicts who had given contradictory statements during the investigation of the case. We reject this argument for the following reasons. First, defendant has not made a showing that such an expert was available or what the expert

12

would say.  Second, there is no reason to find that the expert's testimony would have created a reasonable possibility of a different verdict.  The jury was instructed by the court that the testimony of drug abusers should be weighed with "greater caution" than the testimony of a witness who did not abuse drugs.  Doc. No. 59, Instruction No. 25.  Finally, it was reasonable to put off calling such a witness because the court may have found that the witness's testimony was inadmissible.  Cf., <u>U.S. v. Benally</u>, 541 F.3d 990, 994-96 (10th Cir. 2008) <u>cert. denied</u>, 129 S.Ct. 1020 (2009) (affirming trial court's refusal to admit expert testimony regarding false confessions); <u>Gilson v. Sirmons</u>, 520 F.3d 1196, 1243 (10th Cir. 2008) <u>cert. denied</u>, 129 S.Ct. 1327 (2009) (refusing to grant habeas relief on the basis of trial court's refusal to allow expert testimony concerning credibility of child witnesses); <u>U.S. v. Adams</u>, 271 F.3d 1236, 1245-46 (10th Cir. 2001) <u>cert. denied</u>, 535 U.S. 978 (2002) (affirming exclusion of expert testimony which did little more than vouch for credibility of another witness).

C.  <u>Calvin Mounkes and Dexter Claspill</u>

Defendant argues that his trial counsel was ineffective because he failed to subpoena Calvin Mounkes and Dexter Claspill as witnesses for the trial.  These two names were mentioned by Mark Hight during his trial testimony.  Hight testified that he found an ATF explosives book in defendant's shop.  He said the book described with text and illustrations how to make bombs.  Hight

stated that he removed the book from defendant's property and did not return it. He further testified that he let a friend named "Dexter" read the book, but "Dexter" did not return the book to Hight.

On cross-examination, Hight stated that defendant let other people store things in defendant's shop, and that one such person was Calvin Mounkes. He also stated that he never saw defendant with the ATF book.

Hight's testimony was not one-sided against defendant. For instance, he stated that although he was in defendant's shop all the time, he did not see defendant experiment with explosives, fireworks or pop bottle bombs. He denied seeing wicks, fuses and gun powder on defendant's property. He also stated that defendant consistently denied any involvement in the crime charged in this case.

Defendant argues that his counsel should have investigated Calvin Mounkes to determine whether the ATF book belonged to him. Defendant does not indicate that Mounkes would have contradicted Hight's testimony. Nor does defendant persuade the court that testimony from Mounkes would possibly have made a difference in the verdict. Therefore, the court shall reject this part of defendant's argument.

Defendant's assertions regarding Dexter Claspill suffer from the same problem. Defendant claims that Claspill would have

testified that he had never heard Mark Hight talk about bombs, explosives or firearms, nor did he recall ever receiving a bomb-making book from Mark Hight.  However, Claspill's testimony would not have rebutted Hight's statement that he saw the ATF book in defendant's shop, which was the only damaging aspect of Hight's testimony that was not repeated in the testimony of other witnesses.  At that, Hight testified that he never saw defendant with the book and that other persons stored things in defendant's shop.  Given this background, it was reasonable for defendant's trial counsel not to call Claspill as a witness.  It is also clear that calling Claspill as a witness would not have possibly affected the verdict in this case.

D.  <u>Cross-examination of Mark Hight</u>

Defendant next contends that his trial counsel was ineffective because of his failure to adequately investigate and cross-examine Mark Hight.[2]  Defendant argues that his trial counsel should have cross-examined Mark Hight regarding:  a pipe bomb Hight had placed under a pickup truck several years before; a threat Hight once made to defendant to "watch his back;" explosions which occurred on defendant's property because of methamphetamine "cooks" and cleanup; Shawn Caraway burning a wall in a garage during a methamphetamine "cook;" and Hight's "mental disorders."

_____

[2] These are arguments 11, 12, 13 and 14 in defendant's memorandum in support of his § 2255 motion.  Doc. No. 101, pp. 35-43.

Defendant does not demonstrate that any of these matters would have possibly made a difference in the outcome of this case. The jury was aware that Hight was facing federal charges for conspiracy to distribute methamphetamine and that, because of his testimony, the government might make a recommendation regarding sentence. Hight admitted to using methamphetamine and cooking methamphetamine on defendant's property on a daily basis. Thus, the jury had some grounds to give Hight's testimony cautious consideration.

The court believes that none of the issues mentioned by defendant would have contributed significantly to the jury's consideration of Hight's testimony and the case as a whole. There is no claim that the pipe bomb incident had anything to do with this case. There is also no claim that Hight had the opportunity, means or motive to commit the crime in this case. Furthermore, the pipe bomb incident could not be considered a crime of dishonesty which would reflect against Hight's credibility.

Defendant supplies no context for the alleged threat against defendant and, therefore, it is impossible to determine whether defendant's trial counsel exercised sound judgment in declining to raise the matter before a jury. In addition, some aspects of Hight's testimony were positive for defendant. Therefore, it seems most unlikely that a jury would have decided that Hight had testified against defendant or otherwise tried to "frame" defendant to carry out a vendetta.

Defendant suggests that it would have helped his case for the jury to know that some explosive sounds from defendant's property were produced from the production and cleanup of methamphetamine "cooks" and that Shawn Caraway once burned down a wall. Shawn Caraway testified that some aerosol cans exploded when trash was burned. Doc. No. 90, Tr. at 133-34. Given this testimony and the other testimony regarding explosions,[3] the court believes defendant's proposed line of cross-examination would have had no impact upon the jury.

Finally, there is no indication from defendant's motion that Hight had a mental disorder other than ADHD. The court does not believe cross-examination on this point could possibly have made a difference in the verdict or that defendant's trial counsel could be considered negligent or unprofessional for failing to raise the matter.

E. <u>Cross-examination of R.W. Britain</u>

Defendant's next two arguments pertain to the cross-examination of R.W. Britain, a United States Postal Inspector who investigated this case.[4] First, defendant claims that his trial

---

[3] Denise Caraway testified that she heard explosions on the property and that defendant experimented with explosives. Doc. No. 84, Tr. at pp. 472-74. Shawn Caraway also testified about loud explosions other than the aerosol cans. Doc. No. 90, Tr. at pp. 21-22 and 104.

[4] These are arguments 15 and 16 in defendant's memorandum in support of his § 2255 motion.

counsel made a mistake by not questioning Britain about Mark Hight as a suspect in the investigation. Defendant contends that his counsel should have used the cross-examination of Britain to elicit information regarding Hight's conviction for using a pipe bomb, a prior threat by Hight against defendant, and the fact that Hight had access to a bomb-making book. Second, defendant argues that his counsel should have questioned Britain concerning an alleged statement by Britain that bomb cases were usually motivated by a love interest gone bad or someone trying to kill an employer. Defendant contends that such questioning would have revealed that the investigation was too narrow because it ignored suspects who may have had different motives.

We reject these arguments for the following reasons. First, as the government points out, the scope of cross-examination is generally considered a matter of trial strategy which deserves a presumption of validity. <u>Ritchie v. Mullin</u>, 417 F.3d 1117, 1124 (10th Cir. 2005) <u>cert. denied</u>, 547 U.S. 1045 (2006). The cross-examination suggested by defendant may have backfired by eliciting information which exculpated Mark Hight or which strengthened the love interest motive advanced by the government in this case. Trial counsel's decision not to explore these areas should not be attacked with speculation regarding the possible result of a different course when one could just as easily suggest why that course was not followed. Second, it is quite possible that

questioning regarding Mark Hight and a prior pipe bomb incident would have been disallowed on the grounds of hearsay or lack of relevance. Finally, defendant fails to persuade the court that different questioning on cross-examination would possibly have changed the verdict in this case. The jury obviously believed the testimony of Shawn Caraway, who testified that he saw defendant making the bomb and that he mailed the bomb at the instruction of defendant. Defendant merely speculates that the cross-examination would have persuaded a jury that other persons with different motives committed the crime in this case. See <u>Cummings v. Sirmons</u>, 506 F.3d 1211, 1229 (10th Cir. 2007) <u>cert. denied</u>, 128 S.Ct. 2943 (2008) (rejecting speculative claim that counsel was ineffective for failing to investigate and present evidence pointing to other suspects).

F. <u>Dan Heideman</u>

Defendant contends that his counsel was ineffective because he failed to call Dan Heideman, the Postmaster of the Wamego Post Office, as a trial witness. Heideman told investigators that the person he saw at the post office mailing the parcel was a man he recognized from St. Mary's, Kansas who was approximately 35 years old. Heideman did not recognize a photograph of Shawn Caraway.

Calling witnesses is an area of trial strategy where trial counsel's judgment is entitled to a presumption of validity. <u>Valenzuela v. U.S.</u>, 261 F.3d 694, 699-700 (7th Cir. 2001). In this

19

instance, the proffered testimony of Heideman is contradicted by the testimony of the postal clerk, Mike Wulf, who actually received the package for mailing. Wulf testified that the package was mailed by a young man of average build in his early twenties. Of course, the proffered testimony is also contradicted by Shawn Caraway, who testified that he mailed the package at the Wamego Post Office. In addition, according to the government's response to defendant's motion, the person identified by Heideman was determined to be a 38-year-old, mentally challenged grocery store employee in Manhattan, Kansas who lived with his parents. This person denied any involvement in the crime and any knowledge of anyone named Caraway. The government indicates that this person would have been called to testify at trial if Heideman had been called as a witness by defendant.

In light of these circumstances, the court cannot conclude that defendant's trial counsel made an unreasonable error of professional judgment by failing to call Heideman as a witness. Nor does the court believe that Heideman's testimony would possibly have had an impact upon the verdict in the case.

G. Motion to suppress eyewitness identification testimony

Defendant's trial counsel filed a motion to suppress eyewitness identification evidence from Mike Wulf and Lynette Stokke, who identified Shawn Caraway as the person who mailed the package in question at the Wamego, Kansas Post Office. The motion

was conceded by the government.  Lynette Stokke did not testify at the trial.  Mike Wulf did testify, but in his testimony he did not specifically identify Shawn Caraway as the person who mailed the package.

Defendant argues in the motion to vacate that it would have been a better strategy to allow Wulf and Stokke to testify and identify Shawn Caraway as having mailed the explosive device. According to the government, both Wulf and Stokke picked a picture of Shawn Caraway out of a photo lineup when they were asked to identify the person they thought mailed the package at issue.  This testimony would have been presented to the jury if defendant's trial counsel had not filed the motion to suppress.  Although defendant claims that this identification testimony from Wulf and Stokke could have been attacked on cross-examination, the court cannot conclude that defendant's trial counsel committed an error by having their identification testimony suppressed.

H.   Tamara Gilliland and Victoria Foster

Defendant's final two arguments contend that his trial counsel was ineffective because he failed to call Tamara Gilliland and Victoria Foster as witnesses.  Defendant indicates that both women would have testified:  that defendant was not a "scorned man;" that he had moved on with his life after the divorce; and that he was seeing another woman (Gilliland).

The court shall reject these arguments for the reasons offered

by the government. As previously noted in this order, the witness decisions of defendant's trial counsel are presumed to be correct. During the trial, defense counsel presented testimony from defendant's daughter that defendant had started seeing another woman.[5] This testimony did not have an impact upon the jury, and additional testimony would have merely been cumulative. Finally, there is no reason to find that the proffered testimony would have influenced the jury to change its verdict which was based upon physical evidence, the testimony of Shawn Caraway, as well as the statements of several other witnesses who described defendant's reaction to the breakup of his marriage and his ex-wife's relationship with a man who was once his best friend.

V. MOTION FOR APPOINTMENT OF COUNSEL

Defendant has asked the court to appoint counsel. Doc. No. 103. This request shall be denied. There is no constitutional right to counsel beyond the direct appeal of a conviction. U.S. v. Prows, 448 F.3d 1223, 1229 (10th Cir. 2006). Appointment of counsel is authorized under 18 U.S.C. § 3006A(a)(2)(B) when the court "determines that the interests of justice so require." Defendant has been able to adequately present his arguments for relief. Although those reasons are not persuasive to the court, the court

---

[5] However, Jessica Caraway also testified that defendant's threatening comments about his ex-wife and Spud Owens continued and that he became upset if someone brought her up. Doc. No. 84, Tr. at 448-49, 456.

does not believe appointment of counsel would materially improve the pursuit of fairness and justice in this matter. Therefore, the court shall deny defendant's motion for appointment of counsel.

## VI. MOTION FOR EVIDENTIARY HEARING

Defendant has filed a motion for an evidentiary hearing. Doc. No. 110. The motion also requests a discovery hearing. For the reasons explained above, the court believes that the § 2255 motion, files and records in this case conclusively show that defendant is not entitled to relief. Defendant provides no basis to find that an evidentiary hearing or a discovery hearing would significantly assist the court in resolving the issues raised in defendant's motion. Therefore, the motion for an evidentiary hearing shall be denied.

## VII. CONCLUSION

Defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255 shall be denied. Defendant's motions for appointment of counsel and for an evidentiary hearing shall also be denied.

**IT IS SO ORDERED.**

Dated this 15th day of September, 2010 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge