IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                **Plaintiff,**

v.

THOMAS GUY CARAWAY (01),

                **Defendant.**

Case No. 06-40138-01-DDC

## MEMORANDUM AND ORDER

Defendant Thomas Guy Caraway has filed his Motion to Terminate Term of Supervised Release (Doc. 183). It asked the court to terminate his 36-month term of supervision. The court, as explained below, grants the motion. It begins with the relevant background.

### I.      Background

The court views the background of this motion in two distinct and somewhat contradictory ways.

On the negative side of the equation, there is this defendant's horrifying criminal conduct. The Circuit summarized this conduct in the opinion affirming his conviction. *See United States v. Caraway*, 534 F.3d 1290 (10th Cir. 2008), *post-conviction relief granted by* No. 06-40138, 2024 WL 2803083 (D. Kan. May 31, 2024). In January 2004, Mr. Caraway caused the mailing of a package containing a bomb to a home occupied by a gentleman whom Mr. Caraway once had viewed as his best friend. *Id.* at 1292. Mr. Caraway arranged this mailing after his ex-wife had begun a relationship with the man. *Id.* When the package arrived in the mail, the recipient's 13-year-old son thought the package contained a gift for his birthday (which

had just passed). *Id.* So, he and his father opened the package together. *Id.* They found a toolbox. *Id.* They then opened the toolbox. *Id.* It exploded, expelling shotgun pellets in all directions. *Id.* Some of them hit the teenager in his shoulder. *Id.* Another 14 or 15 pellets hit his father in his left hand. *Id.*

Later, the victims learned just how much luck had favored them. *Id.* An inspection revealed that the toolbox contained a spring-loaded shotgun device that engaged when the toolbox opened. *Id.* When this happened, a model-rocket ignitor contained inside a bag of gun powder inside a PVC pipe exploded. *Id.* The box also contained a bottle of gasoline that, it appeared, was calculated to ignite a fire. *Id.* But only one of the two shotgun shells discharged, and the fire never incited. *Id.*

A jury convicted Mr. Caraway of two crimes: (1) causing an explosive device to be delivered by U.S. mail and (2) possession of an explosive device during and in relation to a Crime of Violence. *Id.* at 1293. In July 2007, United States District Judge Richard D. Rogers sentenced Mr. Caraway to a controlling term of 30 years in prison. *Id.* Later, the law changed, and it rendered Mr. Caraway innocent on the second of his two convictions. The court thus resentenced him in May of 2024. The new sentence? Time served.

Some ten days later, Mr. Caraway began his term of supervision—a term lasting 36 months under Judge Rogers's original sentence. A little more than a year after that commencement, Mr. Caraway filed the current motion. Doc. 183 (filed August 6, 2025). It asked the court to terminate his supervision early, after he has served just less than half of it. Both the United States and the United States Probation Office oppose his motion.[1] Doc. 184.

---

[1] The court sought the victim's view of Mr. Caraway's motion for early termination. Doc. 185. In an email to the court, the prosecutor informed the court that he'd attempted to contact the victim and his family. But the prosecutor didn't receive any response. So, the court must decide this motion without the victim's input.

On the positive side of the equation, there is Mr. Caraway's admirable conduct since he commenced supervision.  Since his release from custody, Mr. Caraway has performed well.  He hasn't violated any of his conditions and requires, at least currently, minimal supervision.

Mr. Caraway explains why he has filed this motion.  He asserts that he asks to terminate his term of supervised release (TSR) early because he "wishes to travel freely in order to visit" relatives who live in Colorado.  Doc. 183 at 5.  Shedding supervision would allow him to spend more time with his relatives and, he argues, thus promote "prosocial contacts and further reducing his already low odds of reoffending."  *Id.*

## II.        Legal Standard

The court enjoys substantial discretion when it decides whether to terminate a TSR ahead of its natural expiration.  *See* 18 U.S.C. § 3583(e)(1).  The controlling statute directs the sentencing court to decide whether early termination "'is warranted by the conduct of the defendant released and the interest of justice.'"  *See Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012) (quoting 18 U.S.C. § 3583(e)(1)).  The Sentencing Guidelines embrace this same theme, directing courts to conduct an "individualized assessment of the need for ongoing supervision" and decide whether "termination is warranted by the conduct of the defendant and [is] in the interest of justice."  U.S.S.G. § 5D1.4(b).

But the district court's discretion isn't boundless.  To the contrary, § 3583(e)(1) provides that the court may terminate a motion only "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a) (2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."  *Id.*  These specified factors evaluate:  "the nature and circumstances of the offense and the history and characteristics of" the defendant; the need to "afford adequate deterrence to criminal conduct;" the need to "protect the public from" defendant's "further crimes;" the need to provide defendant "with needed educational or vocational training, medical care, or other correctional treatment in the

3

most effective" fashion; the "kinds of sentence and the sentencing range established" for

defendant under the Guidelines; any "pertinent policy statement;" the need "to avoid

unwarranted sentence disparities among defendants with similar records;" and the "need to

provide restitution" to the offense's victims.  18 U.S.C. § 3553(a).

Commentary to the recently revised Guidelines Manual supplements this statutory list of

considerations.  *See* U.S.S.G. § 5D1.4. cmt. n.1(B).  This commentary provides that the court

may wish to consider the following factors:

- any history of court-reported violations during the TSR;

- defendant's ability to self-manage lawfully;

- defendant's substantial compliance with his conditions;

- defendant's engagement in prosocial activities and any prosocial support supporting lawfulness beyond the TSR;

- demonstrated reduction in risk level during the TSR;

- and a range of factors informing whether termination "will jeopardize public safety[.]"

*Id.*

### III.    Analysis

The parties hold quite different perspectives about how these specified factors cut here.

Mr. Caraway contends his performance during supervision shows he successfully has navigated

the transition back to community life.  He notes his criminal history included just two one-point

convictions and, if sentenced today, his criminal-history category would reduce from III to II.

He also notes he's around 70 years-old and, given his limited history, he poses little danger to the

community.  He argues that terminating supervision of compliant offenders provides incentive

for other offenders to comply with their conditions.  Doc. 183 at 4–5.

4

The government doesn't take on the premise of these arguments, but it isn't persuaded that they warrant early termination here. The government views Mr. Caraway's early release from custody following his reduced sentence as "a windfall" and leaves him undeserving of more reprieve. Also, the government argues, continuing supervision will afford adequate deterrence to criminal conduct and protect the public. And though it concedes that defendant's return to criminal behavior is a low probability, the court still should hold concerns about a reduced term "relative to what is an appropriate term of supervised release." Doc. 184 at 6.

Some factors plainly disfavor Mr. Caraway's motion. Start with the obvious. The nature and circumstances of his offense—intrinsically grotesque when convicted and sentenced— remain so today. He imagined, designed, and assembled an explosive device designed to maim and, perhaps, kill. Mr. Caraway knew the intended recipient well. Studied and persistent conduct produced this crime and the injuries it inflicted upon the victims.[2]

Just as surely, some factors favor termination. The crime occurred more than two decades ago. And Mr. Caraway spent a significant amount of time in prison for the crime, which surely served to deter Mr. Caraway from future crime. Now, Mr. Caraway is almost 70 years old, so the court finds that Mr. Caraway poses little danger to the community. And nothing suggests that the TSR is permitting Mr. Caraway to continue receiving educational or vocational training, medical care, or other correctional treatment. Nor will a terminated TSR produce an unwarranted sentencing disparity. Likewise, several of the factors suggested by the newly revised Guidelines favor termination. Most importantly, there's no "history of court-reported

---

[2] The court rejects the government's argument that the grant of Mr. Caraway's post-conviction motion provides a reason to deny his supervised-release motion. The court granted that (uncontested) motion because Mr. Caraway's 18 U.S.C. § 924(c) conviction was constitutionally invalid. The court doesn't view this vindication of Mr. Caraway's constitutional rights as a windfall.

5

violations" during this TSR as Mr. Caraway has complied substantially with his conditions.  *See* U.S.S.G. § 5D1.4. cmt. n.1(B).

The court, having considered all relevant factors, concludes that Mr. Caraway's situation warrants early termination of his TSR.

## IV.      Conclusion

The court grants Mr. Caraway's Motion to Terminate Term of Supervised Release (Doc. 183).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Caraway's Motion to Terminate Term of Supervised Release (Doc. 183) is granted.

**IT IS SO ORDERED.**

**Dated this 17th day of March, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
